182    257
20 SC ¹611
182    257
27 SC ¹ 59
27 SC ¹460

182   257
39SC¹610

Stephen J. Owens and Benjamin L. Greider, Appellants
*v.* The City of Lancaster.

[Marked to be reported.]

*Waters—Use of open stream as sewer—Municipality—Negligence.*

Where a municipality adopts a stream as an open sewer it is bound to keep open the channel of the stream and to remove accumulations of filth, ashes or other material that obstruct the flow of the water and throw it out of its banks upon the land of adjoining owners. There can be no prescriptive right to neglect so plain a municipal duty.

In an action against a city to recover damages for injuries caused by the use of a stream as an open sewer, the evidence for the plaintiffs tended to show that the use of the stream as a sewer created an increase in the natural flowage of the stream, so that in the times of ordinary rains the banks of the stream were overflowed, the plaintiffs' land was washed with sewage, the banks of the stream were broken down and washed away, and considerable quantities of filthy and offensive refuse were allowed to accumulate on the banks and in the stream, which not only obstructed the flow, but emitted disgusting, unhealthy and injurious odors over the plaintiffs' land and buildings to such a degree as to render the same uninhabitable, and to prevent the owners from renting the same for any sum whatever. *Held*, that the case was for the jury.

Argued May 18, 1897.   Appeal, No. 81, Jan. T., 1897, by plaintiffs, from judgment of C. P. Lancaster Co., Sept. T., 1894, No. 39, refusing to strike off nonsuit.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.   Reversed.

Trespass to recover damages for injuries to landowners caused by the use of the stream as an open sewer.

The court below, LIVINGSTON, P. J., filed the following opinion, on the motion to take off the nonsuit:

The stream of water now called Hoffman's Run in the city of Lancaster, Pennsylvania, is made up by several springs of water arising in said city, it commences in the northwestern part of the city, and running southeast and southward through the city, it flows into the Conestoga river.

It forms the only natural drainage course for about one thousand acres of land, or about three fourths of the built-up portion of the city of Lancaster, there is no other watercourse, natural

or artificial, through or by which that portion of the city can be drained.

Many years since the city began to build sewers for drainage, and of necessity those sewers had to empty into this natural channel, Hoffman's Run, indeed all sewers built in this section of the city must necessarily empty in this outlet. There is no other outlet for the drainage of that section of the city, and no additional or natural streams have been connected with it, no additional territory drained into it by sewerage or otherwise. This is clearly shown by plaintiffs' evidence. It is also shown that in fair weather the bed of this stream is at all times wide and deep enough to carry off its own volume of water, and all the water and sewage drained into it by the city sewers, without overflowing its banks, and without any damming of the water from any cause which made it overflow its banks. That by reason of sewer connection the ordinary flow is increased some, not a great deal; in times of flood it is greater; in times of flood the bed of the run is not large enough to carry off all the water without overflowing its banks. It is also shown that on plaintiff's land the banks along the stream have been somewhat changed by washing, that the bank on their side is composed of clay, and that their title runs to or calls for the middle of Hoffman's Run; but it is also shown, that on the other or east side of this run, stone walls were built by the owners of the adjoining land, and B. M. Greider, a former owner, says: "There is a wall built on the east side from the tannery down to Hazel street, which throws the water over." M. W. Raub says: "The banks have been washed away, caused by the water striking the wall and being forced over," and the present owner and plaintiff, B. L. Greider, says: "The bank along our side has washed away five feet, some places more, and some places not so much. The water in the stream is deeper in some places than at others. The walls on the opposite side have caused the water to wash over on our side." "He took it for granted the city would build a sewer there, of course." It is also shown that "Locher's tannery" has been built out into this run for some distance along the run on the east side, opposite plaintiff's property. It is also shown that at times unpleasant odors are found along this stream in this vicinity; but it must be remembered that Locher's tannery adjoins plaintiff's land on the east

side of the stream; Groetzinger's tannery is just above it. The cotton mills are near it. The gas works are near it, and dye houses, the waste and refuse matter from which, also cause and render the atmosphere to be impure, these empty their refuse into this run, and it mingles with the sewage of the city flowing through plaintiffs' lands.

Taking the whole case as presented we are of opinion that judgment was properly entered, and therefore now discharge the rule. ·

Other facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*T. B. Holahan*, of *Martin, Holahan & Alexander*, for appellants.—Plaintiffs were entitled to have just compensation: Constitution of Pennsylvania, art. 16, sec. 8; Reading v. Althouse, 93 Pa. 400; Snyder v. Lancaster, 20 W. N. C. 184; Pusey v. Allegheny, 98 Pa. 522.

Acquiescence will not be presumed against one who has no choice: Jessup v. Loucks, 55 Pa. 361; Huddleston v. Bellevue Borough, 111 Pa. 121.

Defendant was guilty of negligence: Vanderslice v. Philadelphia, 103 Pa. 107; Crosland v. Pottsville Borough, 126 Pa. 511; Baltimore & Potomac R. R. v. Baptist Church, 108 U. S. 318; Byrnes v. Cohoes, 67 N. Y. 204; Bastable v. Syracuse, 8 Hun, 587; Noonan v. Albany, 79 N. Y. 475; Philadelphia v. Collins, 68 Pa. 122; McCallum v. Germantown Water Co., 54 Pa. 53.

Municipal corporations cannot throw a body of water upon the property of one of its citizens which would not have naturally flowed there: Torrey v. Scranton, 133 Pa. 173; Haus v. Bethlehem, 134 Pa. 12; Briegel v. Philadelphia, 135 Pa. 459; Keiser v. Mahanoy City Gas Co., 143 Pa. 289; Weir v. Plymouth Borough, 148 Pa. 566; Butchers' Ice & Coal Co. v. Philadelphia, 156 Pa. 54; Good v. City of Altoona, 162 Pa. 493.

When a peremptory nonsuit is entered the defendant must be considered as having admitted every fact which the evidence tends to prove: West Phila. Nat. Bank v. Field, 143 Pa. 473; Hill v. Trust Co., 108 Pa. 1; Abraham v. Mitchell, 112 Pa.

230; Miller v. Bealor, 100 Pa. 585; McGrann v. R. R., 111 Pa. 171; Jones et al. v. Bland, 116 Pa. 190; Winters v. Mowrer, 1 Pa. Superior Ct. 51.

*A. B. Hassler*, with him *J. W. Brown* and *A. F. Shenck*, for appellee.—The testimony failed to show that the city was guilty of any negligence or carelessness in the use of this sewer, and the learned judge of the court below properly refused to take off the judgment of nonsuit: Blizzard v. Danville Borough, 175 Pa. 479; Fairlawn v. Scranton, 148 Pa. 231; Fair v. Phila., 88 Pa. 309; Collins v. Phila., 93 Pa. 272; Bear v. Allentown, 148 Pa. 80; Lippincott v. P. R. R., 116 Pa. 472; Wood on Nuisances, sec. 541; Keiser v. Gas Co., 143 Pa. 276.

A municipality has a right to empty its sewerage into a stream: Munn v. Pittsburg, 40 Pa. 364; Dillon on Municipal Corporations, sec. 1047; 16 Am. & Eng. Ency. of Law, 996; Addison on Torts, Wood's edition, sec. 162; Wood on Nuisances, sec. 444; Good v. Altoona, 162 Pa. 493; McCallum v. Germantown Water Co., 54 Pa. 53.          •

The odors and smells from this stream do not constitute a public nuisance, where they are, in a part of the city where few if any people live, surrounded by tanneries, gas works, mills and dye houses: Blizzard v. Danville, 175 Pa. 479; 16 Am. & Eng. Ency. of Law, 927; Hackney v. State, 8 Ind. 494; Wood on Nuisances, p. 76; Rex v. Neville, Peake, 93.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

The evidence for the plaintiffs in this case tended strongly to establish several conditions as the result of the defendant's user of the stream as an open sewer. First, that it created an increase in the natural flowage of the stream, so that in times of ordinary rains the banks of the stream were overflowed and the plaintiffs' land was washed with sewage and offal, and the banks of the stream were broken down and washed away. Second, that considerable quantities of filthy and offensive refuse were allowed to accumulate on the banks and in the stream, and not only to obstruct the flow but to emit disgusting, unhealthy and injurious smells and odors, which extended to such a degree over the plaintiffs' land and buildings as to render the same uninhabitable and prevent the owners from renting the

same for any sum whatever. The testimony was quite positive that the premises commanded a rental of $300 per annum in 1887, and afterwards a rental rapidly diminishing to 1890, when it ceased to have any rental value whatever, and from the latter date the property could not be rented at any price and stood idle. It was abundantly proved that this state of things resulted exclusively from the presence of decaying offal and offensive refuse along the banks and in the stream, and the extremely noisome and unwholesome odors, vapors and smells which pervaded the premises of the plaintiffs from the matter brought down the stream. Third, there was also evidence showing that the stream was obstructed so that the bottom was considerably elevated by the accumulations of sand, solid refuse and other substances, which the defendant did not clean out, but allowed to increase from year to year, and thus caused frequent overflows upon the land of the plaintiffs. It was alleged for the plaintiffs that these grievances were of so serious and injurious a character as to amount to a continuing nuisance on their lands, and they therefore claimed damages from the defendant. Now the question whether these consequences resulted from acts and omissions of the defendant, and whether they were of the very serious character complained of by the plaintiffs, were questions which the jury alone could decide. They were pure questions of fact, and it is not possible to say that they were not supported by testimony. It is not necessary to review the testimony in detail, because the case abounds with it. The learned court below seemed to take the view that, because the city had used the stream as an open sewer for a long time, and had a right to use a stream for a sewer, it was not responsible for any consequences of such user. But that this view is not sanctioned by the authorities is very clear. Thus in Butchers' Ice and Coal Co. v. Philadelphia, 156 Pa. 54, we held that the city was liable to the owners of a wharf for injury to their property caused by deposits from their sewer. In Harris v. City, 155 Pa. 76, it was decided that the city was liable to a lot owner for maintaining a sewer mouth upon his lot. In Good v. Altoona, 162 Pa. 493, a city constructed a system of sewers the contents of which emptied into a stream, polluting it. The bed of the stream was of limestone rock, through the fissures of which the water found a well-defined passage, and fed two

springs near plaintiff's farm buildings. The springs were rendered unfit for use. Plaintiff was also unable to obtain pure water by digging wells, as the whole underground supply was polluted. We held that the plaintiff was entitled to recover damages from the city. In the very recent case of Blizzard v. The Borough of Danville, 175 Pa. 479, the leading facts were quite similar to those of the present case. A borough adopted a small stream as an open sewer in 1860. An action was brought in 1891 to recover damages from the borough for obstructing the flow of the stream by the accumulation of·sewage, so that the banks were overflowed and injuries caused to the plaintiff's land abutting on the stream. We held that where a municipality adopts a stream as an open sewer it is bound to keep open the channel of the stream, and to remove accumulations of filth, ashes or other material that obstruct the flow of the water, and throw it out of its banks upon the land of adjoining owners. There can be no prescriptive right to neglect so plain a municipal duty. Our Brother WILLIAMS, delivering the opinion said, "If the borough has simply drained into this stream and then given no attention to the effect of its action on the stream or on lot holders along its banks, and the stream has been choked or its channels obstructed in consequence of the character or quantity of the material drained into it, and injury has resulted to the plaintiff, the negligence of the borough authorities in not removing such obstructions and keeping the channel open, is the true ground on which the plaintiff's right to recover must rest."

We apprehend the same principle would apply to the injury inflicted by allowing offensive and injurious odors and smells to issue from the polluting substances discharged into the stream from the city sewers. We think that the plaintiffs' testimony was quite sufficient to raise questions of fact on these several subjects to carry them to the jury, and that it was therefore error to grant a compulsory nonsuit. The assignments of error are all sustained.

Judgment reversed and new venire awarded.