## Bailey v. Mill Creek Coal Company, Appellant.

*Waters—Deposit of culm in stream—Permanent injury—Province of court and jury.*

In an action to recover damages for injury to property resulting from the raising of a bed of a stream by the deposit of coal dirt, a verdict awarding a specified sum as permanent damages will be sustained, where all of the witnesses testify that at the time of the trial the quantity of coal dirt in the stream was much less than it was prior to a flood which had occurred six years before, and some of the witnesses for the plaintiff testify that the deposit had been generally decreasing, and that the creek was in pretty fair condition, but one of the witnesses for the plaintiff testified that in his opinion the bed of the creek at the time of the trial had become solidified, that the water did not have the same effect upon it since the floods had taken off two or three feet of the coal dirt, and that the floods had reduced it about as much as they would.

*Waters—Deposit of culm in stream—Injury to cellar—Evidence—Opinion of witness.*

In an action to recover damages for injuries to a cellar alleged to have been caused by the deposit of coal dirt in a stream on the plaintiff's premises, an opinion of a witness for the plaintiff as to the depreciation in the value of the property, should not be admitted where the witness is com-

pelled to admit that he had no definite knowledge of the difference between the levels of the cellar and the stream.

*Practice, C. P.—Trial—Charge—Review.*

In an action to recover damages for injury to real property the appellate court will not review an alleged mistake of the trial court in summarizing the testimony of the witnesses as to the difference in rental value where the alleged mistake was not called to the trial court's attention immediately after the charge.

*Trespass—Parties—Husband and wife.*

In an action by a wife to recover damages for injury to real property, the court properly refuses a request to charge that as the plaintiff's husband held a lease of the property which antedated her deed, the plaintiff cannot recover, where the testimony shows that part of plaintiff's claim was for necessary repairs to restore her property to its original condition; that her husband was a party to the record; that he was in court assisting in the prosecution of his wife's claim; and that in one part of his testimony he asserted that after she got her deed he held not under the lease, but under the deed.

Argued Dec. 3, 1901.    Appeal, No. 238, Oct. T., 1900, by defendant, from judgment of C. P. Schuylkill Co., March T., 1893, No. 269, on verdict for plaintiff in case of Margaret I. Bailey and John P. Bailey v. Mill Creek Coal Company.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Judgment modified.

Trespass to recover damages for injuries to plaintiff's cellar and house alleged to have been caused by the deposit of coal dirt in a stream on plaintiff's premises.    Before WADLINGER, J.

At the trial Ignatius Knowles was called by the plaintiff and testified as to the condition of the plaintiff's premises, but could not state with any decree of accuracy what was the difference between the level of the cellar and the stream.    He was permitted to testify under objection and exception as to the difference in the value of the property as affected and as unaffected by the conditions which he had described. [2]

The court charged in part as follows :

[If the alleged nuisance is not of a permanent character and is one which can be abated or such that if no more coal dirt is deposited in the stream the bed of the creek would free itself of the deposit by the washing of the waters of the creek, then

we do not think such permanent injury has been shown as would entitle the plaintiff to recover for permanent injury.

That, however, gentlemen of the jury, is for you to say from all of the evidence in the case. We do not indicate to you an opinion either one way or the other, and we do not say to you how you shall find upon that subject. If you find that there is a permanent injury, then the measure of damages for that permanent injury would be the difference between the value of the property before it was injured and now. This is the general rule, but it will be subject to such further instructions as we will give you later on as to the measure of the defendants' liability in this particular case.] [1]

Defendant presented these points:

4. There can be no recovery in this case for any difference in market value by reason of the coal dirt in the creek. *Answer:* Affirmed as stated. It will be for you to say, however, whether the rise of the bed of the creek by coal dirt has produced the permanent injury to plaintiff; whether the cellar of her house has been made permanently damp and musty and her power of drainage destroyed. [3]

5. There can be no recovery in this case for permanent damages. *Answer:* Refused. [4]

6. John P. Bailey holding the lease on the property alleged to be damaged, Margaret T. Bailey, the plaintiff and landowner, cannot recover in this action. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for temporary damages for $237.44, and permanent damages, $225, total, $462.41.

On a rule for a new trial the court made the following order:

[And now, October 22, 1900, upon the plaintiff's filing a release from John P. Bailey, releasing all claim of damages against the defendant up to the day of the rendition of the verdict in this case, within two weeks from this date, the above rule will be considered discharged and judgment be entered upon the verdict. Upon failure so to do within the specified time, the rule will be regarded as having been made absolute and a new trial granted.] [8]

Defendant appealed.

*Errors assigned* were (1, 3, 4, 5) above instructions, quoting them, (2) rulings on evidence, quoting the bill of exceptions; (8) above order, quoting it.

*Frederick Bertolette* and *Guy E. Farquhar*, with them *Otto E. Farquhar*, for appellant.

*E. A. Beddall*, with him *C. E. Breckons*, for appellee.

OPINION BY RICE, P. J., April 21, 1902:

The facts of this case are in many particulars the same as those which appeared in the case of Hoffman against the same defendant, 16 Pa. Superior Ct. 631. But in the particular about to be noticed the cases differ. There the plaintiff claimed title by adverse possession, and by his own testimony limited his claim and possession by the stone wall which separated his lot from the creek. The deposit in the bed of the creek was not upon his land. At least, the testimony did not show it to be. In this case the plaintiff's deed calls for Canal street on the south. It appears from the map introduced in evidence by the defendant that at that point Mill Creek flows longitudinally through Canal street. The general rule is, that where a public street, highway or alley is called for as a boundary in a deed, the grantee takes title in fee to the middle of the street, if the grantor had title thereto, and did not expressly, or by clear implication reserve it; and where there is no evidence as to the grantors' title, it will be presumed to have extended to the middle of the road or street. If that rule is to be applied here, the plaintiff's title, subject to the rights of the public, includes part of the bed of the stream, which it is alleged, has been raised by the deposits of coal dirt brought down from the defendant's and other collieries. The proportionate responsibility of the defendant for the resultant injury has been established by the verdict of the jury upon sufficient evidence and is not now in question. The question is as to the measure of damages. The jury awarded for temporary damages $237.44 and for permanent damages $225. The latter were awarded upon the theory, that, even if no more coal dirt is deposited in the stream, the bed of the creek will not be freed by the washing of the waters from the deposit; in other words, that the condition of the bed of the stream at the time of the trial is reasonably certain to be permanent, and that in consequence of raising the bed of the stream the plaintiff's cellar has been made permanently damp and musty and her abil-

ity to drain her premises destroyed. It would seem clear that, if there was sufficient evidence to warrant the jury in finding those facts, there was no error in the instructions complained of in the first assignment of error, or in the answers to the defendant's points, which are the subjects of the third and fourth assignments, or in the admission of evidence as to the effect of these conditions upon the market value of the property, which is the subject of the second assignment.

Was there sufficient evidence to warrant the jury in finding those facts?

Concerning the permanence of the condition of the bed of the creek, the learned judge who tried the case said : " All of the witnesses in the case who testified on the subject, as we remember, fix the quantity of coal dirt and muck in the bed of the creek as being much less now than it was prior to the flood of 1894. Between the flood of 1893 and the flood of 1894, the deposit of coal dirt in the creek was fixed at from three to five feet ; some of the witnesses fixed it as high as five feet; whilst after the flood of 1894 and down to the present time it was fixed at from one and one half to two feet." Some of the plaintiff's witnesses, including her husband, testified that the deposit has been gradually decreasing and the bed of the creek lowering, and one of them testified, that, while there is still some deposit in the channel of the creek, " the material that has made all this trouble is washed down pretty well ; the creek is pretty fair at the present time." If this were all the testimony, then, judging the future by the past, the conjecture that the condition of the bed of the creek at the time of the trial will continue permanently would seem not to rest on a very solid foundation. But one of the other witnesses testified, when asked whether or not the coal dirt now in the stream has formed a new bed, " Well, it has about formed a new bed of the stream ; it becomes solidified, becomes perfectly solidified, you may say." Again, when asked whether from his observation the filling is of a temporary or a permanent character, he said : " I believe the bed of the creek as formed now is permanent, I believe that it is there permanently. I think that the floods and rains we have had have reduced it about as much as they will, from the fact that it is solidified now, that the water, it does not have the same effect on it since it has taken off two or three feet of the

coal dirt." This testimony, while adding an element of proof not so clearly brought out in the testimony of the other witnesses, is not absolutely irreconcilable therewith. Nor can we say that it was so improbable as to be unworthy of credit. Viewing the testimony as a whole, we cannot say that the court erred in submitting to the jury the question, whether the bed of the stream had been permanently raised by the deposit.

We come then to the second question of fact stated at the outset of the discussion of the measure of damages. A witness called by the plaintiff after testifying as to the condition of the cellar and the drainage, was asked this question (second assignment): "Will you state to the jury what the difference in the value of that property was as affected and as unaffected by the conditions which you have stated to the jury?" The conditions here referred to were the same as those referred to in the qualification added to the affirmance of the defendant's fourth point (third assignment) which was as follows: "It will be for you to say, however, whether the rise of the bed of the creek by coal dirt has produced the permanent injury to plaintiff; whether the cellar of her house has been made permanently damp and musty and her power of drainage destroyed." The witness testified that the depreciation in market value was $700. It is thus seen that the witness was permitted to testify, and the jury were permitted to find, that the plaintiff's property was depreciated in value, because the stream was permanently raised to such a height as to render it impossible for her to drain her cellar into it. We need not stop to consider her legal right of drainage into the stream. The insurmountable objection to the witness's testimony, as well as to the instructions of the court based upon it, is that he was compelled to admit that he had no definite knowledge of the difference between the levels of the cellar and the creek. The unsatisfactory character of his testimony upon that subject will be exhibited by a brief extract. He said: "I believe yet that the cellar is as deep as the creek. Q. Do you know anything about it? A. Not more than I was in; I did not level it. Q. Could you tell without leveling it? A. No, you could not. Q. Then does not the question as to whether that could be drained or not depend upon the difference in levels? A. That is where it would. Q. How much difference in level would it require to drain that

cellar? A. It would not take so much fall, about an inch and a half to the yard might do; it may be that it might run at present and it may not." On the other hand the uncontradicted testimony of the defendants' engineers based on exact measurements made at different times, was that the surface of the water was at least three feet below the level of the cellar; which, by the way, the plaintiff's witness admitted would be sufficient. But without taking their testimony into account, we conclude that the facts upon which the estimate of depreciation in the value of the property was based were not sufficiently proved. Therefore, the second and third assignments of error are sustained.

We do not sustain the seventh assignment of error. If the alleged mistake of the court in summarizing the testimony of the witness as to the difference in rental value was of the gravity now claimed by counsel, it ought to have been called to the court's attention immediately after the charge. See Commonwealth v. Kay, 14 Pa. Superior Ct. 376, and cases cited on page 391.

In the defendant's sixth point (fifth assignment) the court was requested to charge that, as the plaintiff's husband held a lease of the property which antedated her deed, the plaintiff could not recover in this action. We do not think this necessarily follows, as the testimony shows that a part of her claim was for necessary repairs to restore her property to its original condition. Further, John P. Bailey was a party to the record, and continued to be a nominal party notwithstanding the amendment of the statement; he was in court assisting in the prosecution of his wife's claim for the recovery of these very damages; and in one part of his testimony he asserted that after she got her deed he held, not under the lease, but under the deed. It is true that his cross-examination left this question somewhat in doubt, but in view of his conduct, his testimony as a whole, and of the purposes for which the expenditures, or at least part of them, were made, we conclude, that the court committed no error in refusing the point. See McIntire v. Westmoreland Coal Co., 118 Pa. 108. The release which John P. Bailey subsequently filed pursuant to the order quoted in the eighth assignment precludes all possibility of the defendant being sued by him for the same cause of action, even

if he was not already precluded, as we think he was. The fifth assignment, as well as the sixth and eighth, which relate to the same question, is overruled.

It was conceded by the plaintiff's counsel that the error, if any, in the instructions and rulings of the court relating to the recovery of damages as for a permanent injury could be corrected by striking out that item. This will explain our order.

The amount of the judgment is reduced from the sum of $462.44 to the sum of $237.44, together with interest on the last mentioned sum from the date of the verdict, and as thus modified, the judgment is affirmed.