# Glasgow, Appellant *v.* City of Altoona.

*Municipalities—Waters—Pollution of stream—Damages.*

A municipality which adopts a natural water course as an open sewer is bound to keep the channel of the stream open and to prevent the accumulation of filth and is liable to respond in damages for any injury which may be done to riparian owners in consequence thereof.

Where in such a case injury to real estate is of a permanent character, the measure of damages is the cost of remedying the injury unless the expense thereof exceeds the value of the entire property, in which case the value of the property is the limit of the measure of damages, and in no event can there be a recovery in excess of the value of the entire property for the permanent injury.

Where, however, claim for damages resulting from the pollution of a stream is not merely for permanent injury to land, but includes injury to health, injury to trade and deprivation of the use of water, the plaintiff may recover the entire amount of actual damages up to the trial of the cause irrespective of the value of the land; but the municipality may show that the injury to the land was not permanent, inasmuch as it was possible and practicable to abolish the injurious conditions of which complaint was made.

Argued Oct. 29, 1903.    Appeal No. 148, Oct. T., 1903, by plaintiff, from judgment of C. P. Blair Co., Oct. T., 1899, No. 75, on verdict for plaintiff in case of James P. Glasgow v. City of Altoona.    Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Trespass to recover damages for injuries resulting from the pollution of a stream.    Before CRAWFORD, P. J., specially presiding.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows:

[What is the character of the injury inflicted on him by such pollution as may be directly attributable to the city?    In the light of all the facts before you is there any practicable or feasible means at the disposal of the city by which it may abolish the injurious results it has brought to the plaintiff?    If so, the law requires that it make use of those means; for in the exercise of its rights it must do the least possible injury to the rights of others.    If in its natural location or present situation the

city can without unreasonable cost and trouble secure another outlet for the sewage emptied into the river at the old gas works, and thereby cut off the pollution at the point where it enters the stream, or if with the pollution of the sewage in the water it is possible either to deodorise or render it harmless, or if by any practical and reasonable method it can be transported over and beyond the plaintiff's land where, by the natural facilities of the stream or any artificial means adopted it can be carried away, or divested of its injurious qualities, the city is bound to see that this is done. If in any of the ways mentioned the problem of the sewage disposal can be solved by the city without creating and continuing the conditions complained of by the plaintiff, then a remedy is at hand, and the city must make use of it. In such case, the injury of the plaintiff would not be permanent and he could only recover such actual damages as he may have sustained within six years to the bringing of suit. These would include such incidents of loss or expense as may have actually resulted to him within that time, such as destruction or damage to crops, any necessary outlay of money directly occasioned by such pollution. Whatever may be his loss in that line can be ascertained and for that he should be reasonably and justly compensated.] [1]

Plaintiff presented these points:

6. The mere fact that it is possible by some known method to purify the sewage of the city of Altoona, as it flows into the Little Juniata river and pollutes the water of the same, is no answer to the plaintiff's claim for injury to his property, caused by the permanent and continuous character of such pollution, as the defendant has failed to show that it has adopted, or is about to adopt, any such method or methods, with a view to correcting the wrongs complained of by the plaintiff. *Answer :* This point is affirmed, unless the jury find that it is possible and practicable, under existing conditions, to abolish the injurious conditions complained of; in that case they must do so.] [2]

7. The city of Altoona, defendant, having shown its knowledge of methods in existence for more than twenty-five years for the disposal of sewage, so as to prevent injury or damage to riparian owners on streams into which its sewage flows, and having failed to dispose of its sewage from its first, second and

third sewer districts, which discharge into the Little Juniata river eastward, by the adoption and erection of such known methods, is guilty of negligence and is answerable to the plaintiff, as a riparian owner on said stream, for any damages which he may have sustained by reason thereof. *Answer :* The city would be answerable to the plaintiff, as we have already stated, if it has failed to prevent actual loss to him that it could have reasonably prevented, and should compensate him for permanent injury, if they have done the best they could do under the circumstances, with this sewage. [3]

8. The failure of the city of Altoona, defendant, to adopt well-known methods for the disposal of its sewage in the first, second and third sewer districts, which discharge into the Little Juniata river, but permitting the same to increasingly flow therein, to the injury of riparian owners along said stream, inter alia, the plaintiff, the jury may conclude that the said city does not intend to adopt any such known methods for the disposal of its sewage, and that it intends to continue the use of the Little Juniata river for sewage disposal in the future as it has done in the past. [4]    *Answer :* The city must abate nuisances like that complained of if means are at its hand to do so.    It is not a matter of what the city intends to do, but what they reasonably can and ought to do.

Defendant presented these points :

1. The plaintiff is only entitled to recover such actual damages as the evidence shows that he sustained through the pollution of this stream for six years prior to August 19, 1899, the date of the bringing of this suit.    *Answer :* This point is affirmed as far as actual damages are concerned.

12. If the pollution of the stream can be stopped the jury must assume that it will be stopped.    Therefore the plaintiff cannot recover damages for any permanent, indefinite depreciation in the value of the plaintiff's farm, because such pollution will not be permitted to continue; it must be stopped.    *Answer :* Affirmed. [6]

*Wm. L. Pascoe* of *Stevens & Pascoe,* with him *O. H. Hewitt,* for appellant.—In similar cases, this court has declared it essential for the plaintiff to aver and prove " that the injurious conditions are reasonably certain to be permanent : Hoffman

v. Coal Co., 16 Pa. Superior Ct. 631; Bailey v. Coal Co., 20 Pa. Superior Ct. 186.

The measure of damages is the cost of remedying the injury, unless such cost exceeds the value of the property injured, in which case the value of the property becomes the measure of damages: Welliver v. Penna. Canal Co., 23 Pa. Superior Ct. 79, 84; Lentz v. Carnegie, 145 Pa. 612.

Juries are allowed to act upon probable and inferential as well as direct and positive proof: Hartman v. Incline Plane Co. 159 Pa. 442; Allison v. Chandler, 11 Mich. 542.

*Thomas H. Greevy*, city solicitor, with him *George B. Bowers*, for appellee.—This case is ruled by Good v. Altoona, 162 Pa. 493.

OPINION BY BEAVER, J., January 17, 1905:

Plaintiff's amended statement alleges his ownership in fee of a certain farm and sawmill property, situate in Antes township, Blair county, having thereon erected a dwelling house, tenement house, barn, water power, sawmill and other necessary buildings, part of the said farm being cleared and highly cultivated and the larger part heavily wooded with timber suitable for sawing into lumber and convenient to the sawmill aforesaid; that the Little Juniata river, a nonnavigable stream, runs through its entire length; that, prior to the acts of the defendant complained of, the river added greatly to the beauty, usefulness and value of his property and to the attractiveness and desirability of his dwelling house as a home and place of residence; that its waters were pure, healthful, abounding in food fish, were suitable and convenient for all domestic, dairy, farm and ornamental purposes, and when confined by a dam which plaintiff constructed across said river and conveyed therefrom by a race dug by him, furnished convenient and ample power for driving his sawmill.

The statement further alleges that the defendant, about five miles above the plaintiff's premises, unlawfully emptied the sewage of a large portion of the city into the said stream, in consequence whereof the plaintiff suffered wrong and injury in various ways, specifically set forth in the several claims for damages, which it is important to keep in mind and which are, therefore, here recounted at length.

1. For the deprivation of his right to the use, benefit and advantages of the waters of the said Little Juniata in their natural, pure and uncontaminated condition, for domestic, farm, dairy and ornamental uses and purposes, and in the aforesaid dam and race as power for his sawmill, and of his right of fishing therein, the sum of $10,000.

2. For being disturbed, annoyed, sickened, injured and prejudiced in the possession, use, occupation and enjoyment of his dwelling house, etc., with the appurtenances, and hindered and prevented from occupying, using and enjoying the same in so ample and beneficial a manner as he otherwise might, could, would and ought to have done, $5,000.

3. For the injury in his acts, trades, callings and business of a farmer, dairyman and manufacturer of lumber carried on by him, $5,000.

4. For the permanent injury to and depreciation in value of his farm, mill, buildings and premises aforesaid, $10,000; making the entire claim for damages to person and property $30,000.

That a municipality which adopts a natural water course as an open sewer is bound to keep the channel of the stream open and to prevent the accumulation of filth and is liable to respond in damages for any injury which may be done to riparian owners in consequence thereof, is not an open question in Pennsylvania. We do not understand it to have been seriously denied in the present case. The subject is discussed and settled in Blizzard v. Danville Boro., 175 Pa. 479 ; in Owens et al. v. Lancaster, 182 Pa. 257, and in Shaughnessy v. Pittsburg, 20 Pa. Superior Ct. 609. (See Platt Bros. & Co. v. City of Waterbury, 48 L. R. A. 691.) It is, therefore, unnecessary to discuss the subject here.

Good v. Altoona, 162 Pa. 493, raised two questions, first, whether there was any liability on the part of the defendant and, second, whether the recovery, if any could be had, should be for a permanent injury. In that case the question as to whether or not the injury was permanent was left to the jury and a recovery for $5,000 in the court below was sustained. The general principles involved in the present case are, therefore, well settled. The real question involved is whether or not those principles governed and were

properly applied in their entirety in the trial.   The claim there, however, as we understand the report of the case, was solely for injury to real estate, namely, the destruction of the plaintiff's water supply, by the pollution by underground percolation of sewage from the stream used by the plaintiff as an open sewer.

It is also well settled that, where injury to real estate is of a permanent character, the measure of damages is the cost of remedying the injury, unless the expense thereof exceeds the value of the entire property, in which case the value of the property is the limit of the measure of damages, and in no event can there be a recovery in excess of the value of the entire property for the permanent injury: Lentz v. Carnegie, 145 Pa. 612; Eshleman v. Martic Twp., 152 Pa. 68; Elder v. Lykens Valley Coal Co., 157 Pa. 490; Stevenson v. Ebervale Coal Co., 201 Pa. 112; Stevenson v. Ebervale Coal Co., 203 Pa. 316.   See also Bailey v. Mill Creek Coal Co., 20 Pa. Superior Ct. 186, and Welliver v. Pennsylvania Canal Co., 23 Pa. Superior Ct. 79, in both of which this question is incidentally considered.

The principle upon which these cases all rest is firmly established in Pennsylvania and, as we think, very properly so; but they all relate to injury to real estate alone, and are based upon the theory that where the injury is permanent the damages can be recovered in a single action and that, in order to avoid a multiplicity of actions, it is proper to allow a recovery for the full value of the property injured or destroyed.   It is clear that, if the plaintiff had recovered in this case for the full value of the property injured, he should not have been allowed a recovery for the same cause of action in a subsequent suit. It is to be remembered, however, and it is essential to the proper consideration of this case to remember, that this was not a suit for permanent injury to real estate alone.   The claim for such injury constituted but one of the four causes of action named by the plaintiff in his declaration.

Testimony was given by the plaintiff at the trial as to the amount of damage sustained by him by reason of these several distinct causes of action.   This testimony was submitted to the jury and their finding covered the actual damages sustained by the plaintiff, not only for injury to his real estate but also for the deprivation of the use of the water of the river for do-

mestic, farm, dairy, ornamental and manufacturing purposes, as well as for other injuries to health, etc., for which damages were claimed in the declaration. If the court, therefore, had limited the jury to the consideration of the injury to the real estate and had instructed them, as would under those circumstances have been proper, that the measure of damages was the injury to the real estate to an amount not greater than the value thereof, the plaintiff would have had much more reason to complain than of the instructions now alleged as error, that the plaintiff was entitled to recover the entire amount of actual damages sustained by reason of the use of the river as an open sewer as it flowed through the plaintiff's land, without special limitation as to amount, based upon the several elements of damage as laid in the statement of claim.

There was testimony showing the adoption of a plan for the disposal of a portion of the sewage of the city of Altoona emptying into a stream running in a different direction which was in actual and successful operation. It was also shown that a plan had been prepared and an investigation made as to the practicability of a similar plan for the disposal of the sewage from the first, second and third sewage districts of the city, which naturally emptied into the stream in question, and that, although not officially adopted by the city council nor even prepared in accordance with any official direction from the council, the plans and investigations had been made by a competent engineer at the suggestion of members of the council. These plans were declared by the engineer to be feasible and that he did not regard them as impossible by reason of their cost. It is unnecessary to enlarge upon the testimony in this regard but, in our opinion, it was sufficient to justify the court in submitting it to the jury to be considered by them in determining whether or not the injury to the plaintiff's land was permanent.

The plaintiff's sixth point for charge, as alleged for error in the second assignment, was as follows: " Sixth. The mere fact that it is possible by some known method to purify the sewage of the city of Altoona, as it flows into the Little Juniata river and pollutes the water of the same, is no answer to the plaintiff's claim for injury to his property, caused by the permanent and continuous character of such pollution, as the

defendant has failed to show that it has adopted, or is about to adopt, any such method or methods, with a view to correcting the wrongs complained of by the plaintiff," was answered by the court: " This point is affirmed, unless the jury find that it is possible, and practicable, under existing conditions, to abolish the injurious conditions complained of; in that case they must do so," and again, in answer to a somewhat similar point, the court said : " The city must abate nuisances like that complained of, if means are at its hand to do so. It is not a matttor of what the city intends to do but what they reasonably can and ought to do." We see no errors in these answers.   The unlawful character of the use of the stream by the defendant being practically admitted, the remedy to abate the nuisance can be enforced either in equity by a bill to restrain or at law by an action of damages as often as any injury occurs, and, inasmuch as the injuries complained of are more than those of mere injury to the land, the proper measure of damage is the amount of injury actually sustained and not the mere value of the land.

The case was laboriously tried and, as we think, on the whole, fairly submitted to the jury.   There was no misapplication of the general principles laid down in the cases cited at the beginning of this opinion and we think the case has, on the whole, been sufficiently disposed of by what has been said.

The assignments of error are all overruled.   Judgment affirmed.