## Yeager *v.* City of Pittsburgh, Appellant.

Argued May 5, 1931.

*Harry Diamond,* Assistant City Solicitor, and with him *Charles A. Waldschmidt,* City Solicitor, for appellant.

*John E. Laughlin,* and with him *McKenna & McKenna,* for appellee.

OPINION BY LINN, J., July 8, 1931:

The plaintiff owns a house and lot in Baldwin Township, Allegheny County, bounded on the north by Beck's Run, which divides the township from the City of Pittsburgh, one-half of the Run being within the city. The city maintains that Run as an open sewer to carry off sewage (storm or surface water and sanitary sewage) discharged into it from lands in the City of Pittsburgh; it also carries away sewage from Baldwin Township and other municipalities on the other side, altogether taking the surface water from an area of about 2,800 acres. At some points adjoining Beck's Run on its left bank, and at others not far from the Run, is a county road known as Beck's Run Road. Beck's Run discharges into the Monongahela River at or under Carson Street through a culvert not built or maintained by the City of Pittsburgh. Plaintiff's property is about four hundred and fifty feet up the run from the Carson Street culvert. About fourteen hundred feet further up stream, near

Penn Avenue, is another culvert carrying the Run under Becks Run Road. Some years before the flood described in this case, Beck's Run was cleaned out and, generally speaking, had an average depth of about six feet and, when so maintained, was sufficient, without damaging abutting properties, to carry off all the water coming down the Run.

On July 4, 1928, there was a very severe storm, flooding, among others, plaintiff's property by an overflow which rose to the first floor of the house, filling and damaging the cellar and contents, and washing away vegetation from the garden, etc. To be compensated for that loss, he brought this suit, averring that the city negligently maintained its sewer, by permitting the bed of the Run to become filled up with sand and debris for a long time prior thereto, so that, instead of having its normal depth of about six feet, it was reduced to two feet or less, and that the damage to his property resulted in consequence of the tort. It is not contended that the Run was inadequate if properly kept open.

The learned president judge of the common pleas presided at the trial and clearly kept that issue before the jury. The jurors were taken to the locality and made a view. There was a verdict and judgment for the plaintiff, and the city has appealed.

The single point argued (save a minor matter about Beck's Run Road that will be mentioned) is that the court erred in not directing a verdict for the defendant, or in refusing the city's motion for judgment n. o. v. The question, then, is, was there evidence to go to the jury.

In determining the facts for the purpose of this review, we must consider the oral evidence most favorably supporting plaintiff's verdict, and disregard the rest. The city cannot deny, but must concede, that when it uses a stream or water-course as an open

sewer, it assumes the duty of keeping it clear of obstructions; and if, after adequate notice, it permits the channel to become obstructed with resulting damage to neighboring property, it must respond in damages for the tort: Bigham v. City of Pittsburgh, 83 Pa. Superior Ct. 449 and cases considered on pages 452 and 453.

In its argument, the city contends that the rainfall was so extraordinary that plaintiff's property would have been flooded "irrespective of accumulation of debris in the water course." The appellee denies that.

Of course, if there was no dispute in the evidence from which the city makes its deduction, and the undisputed evidence was as the city contends, a question of law for the decision of the court alone might be presented, but the difficulty with the city's position, as the appellee points out, results from such disagreement among the witnesses as to require a finding by the jury.

The city's contention is three-fold. It is said (1) that the storm was so extraordinary as to be considered an act of God for which it was not responsible; (2) that the flooding of plaintiff's property was directly caused by the inadequacy and the clogging of the culvert at Carson Street where Beck's Run discharges into the river; (3) that the condition of the culvert near Penn Avenue was responsible for the flood.

The dispute of fact shown in the evidence as to all three contentions was recognized by the city at the trial, as appears by a point for charge presented by its counsel, and affirmed by the court, in the course of the charge, as appears by the following quotation: "If you find the facts to be as the plaintiff claims them to be, if you find in his favor, not only the facts but on the question of negligence, and that he has

shown a cause independent of these other two causes, your verdict would be for the plaintiff.

"If you find that the flood was extraordinary and would have swept over this property without this, or that you cannot distinguish, and if you find against the claim as to the culvert and that is not an independent cause, then your verdict would be for the defendant.

"At this point I will read what is called a point presented to me by counsel for the city as a part of the law in this case. It is similar in part to what I have already told you:

" '3. If the jury find from the evidence that the damages to the plaintiff were caused in part by the negligent accumulation of debris in Beck's Run in front of and adjacent to plaintiff's property, or by the clogging of the culvert near Penn Avenue, and also in part by the extraordinary rainfall on the day of the happening of the damages, and the jury also find that the rainfall was so overwhelming in character that it would, of itself, have produced the injuries complained of independently of the allowance of the accumulation of the dirt and debris, then the verdict of the jury must be for the defendant.' "

We must therefore overrule the assignment of error.

The city also presents a question concerning Beck's Run Road. It happens that immediately in front of plaintiff's property the plotted line of the southern boundary of the road extends into the Run, though this is not generally true at other points in the course of the Run. The road as constructed, and physically open, is immediately north of the Run within the city limits. The city states that it is a county road, maintainable by the county (Act of 1911, P. L. 244, section 1), and that as the road, as plotted, extends to the center of the Run, the duty of maintaining that portion of the Run within the plotted street line, though

not within the portion of the street physically open, is imposed on the County of Allegheny, and that the county and not the city is liable for the damage in suit. The city asks that this court determine whose duty it is to maintain the road. The maintenance of the county road is not before us; there is neither averment nor evidence that the road was out of repair; the evidence is that the city was using the Run in its present condition as an open sewer and the verdict has established its negligence in the respect specified.

Judgment affirmed.