## Peter Good *v.* Altoona City, Appellant.

*Water—Pollution of stream by sewage.*

A city constructed a system of sewers the contents of which emptie into a stream, polluting it. The bed of the stream was of limestone rock, through the fissures of which the water found a well defined passage and fed two springs near plaintiff's farm buildings. The springs were rendered unfit for use. Plaintiff was also unable to obtain pure water by digging wells, as the whole underground supply was polluted. *Held,* that plaintiff was entitled to recover damages from the city.

Argued April 16, 1894.   Appeal, No. 94, July T., 1893, by defendant, from judgment of C. P. Blair Co., Oct. T., 1888, No. 118, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, McCollum and Fell, JJ.   Affirmed.

Trespass for damages for polluting stream, springs and well, and creating nuisance.   Before Dean, J.

Plaintiff's evidence was to the effect that defendant emptied its sewage into Dry Gap run which flows into Mill run, which latter stream crosses plaintiff's farm, supplying water for the stock and feeding two springs. The country through which this stream flows is of limestone formation, and as is usual in such formations contains fissures and crevices through which

162  493
182  261
162        493
e27 SC    59
162        493
212        585
162        493
f 23 SC   164
162        493
f221      310

running streams flow underground for indefinite distances. During high water Mill run has a well defined surface course from the city to and across appellee's lands. In low water, after Dry Gap run joins Mill run, the latter flows as a surface stream for several hundred yards, then sinks through crevices in the earth and continues underground for some distance, then emerges and flows upon the surface again, and again sinks and re-emerges at irregular intervals before it reaches appellee's springs and flows across his farm. In its somewhat tortuous course from the junction of Dry Gap run to appellee's springs it passes over and through, in the manner above stated, lands owned by persons in the order following: Baker's heirs, Kinsel, Reamey, Kinsel again, and then appellee. Previous to its pollution by sewage its waters were pure and wholesome; and it is a mountain stream of varying volume according as the season is dry or wet. Some thirty years before the trial of this case it was discovered that washing ore in Mill run, on the Baker farm, near Altoona, discolored the water in appellee's springs and rendered it unfit for use; sawdust also was found in the springs at an early day, when a sawmill was in operation on Baker's land along Mill run; and the height of the water in the springs depended upon that in Mill run, and whenever a freshet occurred, increasing the flow in the run, it washed the sewage accumulated in the underground channel into the springs and overflowed the run upon appellee's land, leaving the filth deposited there.

The court left to the jury the question whether the springs were permanently polluted. [1]

Plaintiff's points were among others as follows:

" 2. If the jury believe from the evidence that the city of Altoona by its system of artificial sewer drainage causes filthy and unwholesome house sewage—contents of water-closets and slaughter-houses, to flow into and pollute a stream, whether of surface or subterranean flow, the use to which, in its natural and pure state, a riparian landowner, through whose land it flows, is entitled, he is entitled to damages for the injury. *Answer:* Affirmed, so far as the damage is permanent or continuous." [2]

" 3. If the jury believe from the evidence that the city of Altoona by its artificial drainage from its system of sewage

causes filthy and unwholesome sewage to flow into and pollute a running natural stream tributary to another stream, the use of which in its pure and natural state a riparian owner is entitled to, and by so doing the fountain or source of pure water springs on the farm of the plaintiff is polluted, and the water rendered unwholesome, dangerous to health and unfit for domestic use or stock, he is entitled to damages for the injury. *Answer:* This point is affirmed so far as the damage is continuing or indefinite as to duration." [3]

" 4. That if the evidence satisfy the jury that the city of Altoona by its system of sewage into Dry Gap run which empties into Mill run, a pure stream, which has run through plaintiff's land more than forty years, as well as supplied, whether in part or wholly, fresh water springs, by surface or subterranean flow, and, by such sewage, rendered the stream unwholesome and dangerous to health, thereby creating a nuisance, as well as destroyed the springs thereon, the injury is of such a character as to permanently affect the land and depreciate the property for an indefinite period, and the plaintiff and owner is to be compensated for the diminished value of the estate. *Answer:* Affirmed, so far as injury is permanent." [4]

Defendant's points were among others as follows :

" 1. The city had a legal right to construct and use sewers to carry off the sewage of the city ; and in doing this it is not liable for consequential damages to private property, if there was no want of skill and care in the exercise of its lawful powers." Refused.   [5]

" 2. Dry Gap run flowing through the city was a natural water-channel, and the city had a right to empty its sewers into it for drainage, and only the riparian owners along it and Mill run into which it flowed had a right to complain of the pollution of the waters in those streams. *Answer:* If by riparian owners it is meant that the owners of springs, such as are alleged by plaintiff in this case to be injured, cannot recover, the point is denied. If this be not the meaning the point is affirmed." [6]

" 3. As the plaintiff was not a riparian owner at the point or points where he alleges the water leaves the bed of Mill run, and percolates by unknown courses through the lands of

three others, a distance of a mile and a half, and then enters his spring and pollutes it, he is not entitled to complain, has had no right violated, and cannot recover on that ground." Refused. [7]

" 4. The streams which flow into plaintiff's spring by percolation may be lawfully cut off and used by others in the enjoyment of their rights so as wholly to deprive him of the water. If the lawful use of the water by others produces the same deprivation by unfitting it for use, it is a loss to which he must submit, and he is debarred from complaint and recovery." Refused. [8]

" 7. The evidence shows the existence of a number of natural fissures or crevices in the bed of Mill run at a point of greater altitude than plaintiff's spring, and if the polluted waters of that stream find their way through these fissures by unknown subterranean courses to his spring, and injure it, he has not thereby a cause of action against defendant." Refused. [9]

" 10. The action being in trespass for a private nuisance which may be abated or restrained by a court of equity, when plaintiff by a final judgment has established his right, the measure of damages in that view of it is not the permanently diminished value of the property, but only such damages as shall compensate him up to the date of the bringing of the suit. *Answer :* This point is denied ; it assumes as a fact that a court of equity would restrain the defendant; this would depend on whether the injury complained of was, from the evidence, continuing or temporary in its nature and should be abated. We have submitted the evidence on this question to you." [10]

Verdict and judgment for plaintiff for $5,000.

*Errors assigned* were (1–10) instructions, quoting them.

*Aug. S. Landis, Edward H. Flick,* city solicitor, with him, for appellant, cited : Munn v. Pittsburg, 40 Pa. 364 ; Barry v. Lowell, 8 Allen, 127 ; Gould on Waters, §§ 148, 220, 223, 282 ; Acton v. Blundell, 12 M. & W. 324 ; Chasemore v. Richards, 5 H. & N. 982 ; Reg. v. Met. Board of Works, 3 B. & S. 710 ; Wheatley v. Baugh, 25 Pa. 532 ; Haldeman v. Bruckhart, 45

Pa. 514 ; Coal Co. v. Sanderson, 113 Pa. 126 ; Lybe's Ap., 106 Pa. 634 ; Upjohn v. Richland Twp., 46 Mich. 542 ; Schlag v. Jones, 131 Pa. 62 ; Wood on Nuisance, § 691 ; High on Injunction, § 506 ; Hilliard on Injunction, 318 ; McCoy v. Danley, 20 Pa. 90.

*O. H. Hewit, M. A. Young* with him, for appellee, cited : 2 Dillon's Mun. Corp., 3d ed. §§ 986, 1045, 1047, 1048 ; Ashley v. Port Huron, 35 Mich. 296 ; Pumpelly v. Green Bay Co., 13 Wal. 166 ; Arimond v. Green Bay Co., 31 Wis. 316 ; Eaton .v. R. R., 51 N. H. 504 ; Beach v. Elmira, 22 Hun, 158 ; Ice & Coal Co. v. Phila., 156 Pa. 54 ; Harris v. Phila., 155 Pa. 76 ; Byrnes v. Cohoes, 67 N. Y. 204 ; Seifert v. Brooklyn, 101 N. Y. 136 ; Chapman v. Rochester, 1 L. R. A. 296 ; Brayton v. Fall River, 113 Mass. 218 ; Bare v. Hoffman, 79 Pa. 71 ; Trowbridge v. Brookline, 144 Mass. 139 ; Wheatley v. Baugh, 25 Pa. 531 ; Haldeman v. Bruckhart, 45 Pa. 518 ; Shuter v. Phila., 3 Phila. 228 ; Briegel v. Phila., 135 Pa. 451 ; Whetstone v. Bowler, 29 Pa. 59 ; Collins v. Chartiers V. Gas Co., 131 Pa. 143 ; Saddler v. Lee, 66 Pa. 45 ; Washburn on Easements, p. 510 ; Hodgkinson v. Ennor, 4 B. & S. 239 ; Ballard v. Tomlinson, L. R. 29 Ch. Div. 121 ; reversing L. R., 26.Ch. Div. 194 ; Kinniard v. Standard Oil Co., 11 Ky. 692 : Richard's Ap., 57 Pa. 105 ; Clark's Ap., 62 Pa. 447 ; Harkinson's Ap., 78 Pa. 196 ; McCaffrey's Ap., 105 Pa. 253 ; Huckenstine's Ap., 70 Pa. 102.

OPINION BY MR. JUSTICE FELL, July 11, 1894:

Little need be said either in explanation or in vindication of the judgment in this case. The plaintiff is the owner of a farm situated three miles from Altoona, through which a stream known as Mill run passes. The bed of the stream is limestone rock, through seams and fissures in which a part of the water finds a subterranean passage and feeds two springs near the farm buildings, from which water is procured for the stock and for domestic purposes.

The city of Altoona constructed sewers, the contents of which flow into this stream, with the result to the plaintiff that the water of the stream and of the springs is so polluted as to be unfit for any use, and at times when the water overflows

the banks of the stream deposits of filth are left on his fields. By digging wells he has been unable to obtain pure water, as on account of the crevices in the rock the whole underground supply is polluted, and he is unable to obtain water for use on his farm except from a great distance and at great expense.

The assignments of error raise two questions : First, whether there is any liability on the part of the defendant; and, second, whether the recovery, if any can be had, shall be for a permanent injury. These questions were both properly submitted at the trial, and the jury found that the act of the defendant destroyed or seriously impaired a property right which the plaintiff possessed in a stream, and that there was no practicable method by which this injury could in the future be averted, and that it was continuing and permanent.

The fact that the stream has a partially subterranean course does not affect the right of the plaintiff, as the location of the part of the stream below the surface is well defined and easily ascertained.

Penna. Coal Co. v. Sanderson, 113 Pa. 126, presented an entirely different question. It was there said : " It will be observed that the defendant has done nothing to change the character of the water or to diminish its purity, save what results from the natural use and enjoyment of their own property. They have brought nothing on to the land artificially. The water as it flowed into Meadow brook is the water which the mine naturally discharges ; its impurities arise from natural and not artificial causes." And the decisions in Howell v. McCoy, 3 Rawle, 256 ; Barclay v. Commonwealth, 25 Pa. 503 ; and McCollum v. Germantown Water Co., 54 Pa. 40, holding that a stream of water may not be fouled by the introduction into it of any foreign substance to the injury of a lower riparian owner, were expressly recognized.

The judgment is affirmed.