# Daniel P. Ladd and Mary E., his Wife, in Right of Said Mary E. Ladd, *v.* Philadelphia, Appellant.

*Municipalities—Sewers—Damages.*

In an action to recover damages for injuries alleged to have been caused to a dwelling house by the construction of a sewer under the street in front of the house which was built on "made ground," it is proper for the court to charge that plaintiff is entitled to recover if the injuries were occasioned by the construction of the sewer, coupled with instructions that if the ground upon which the house stood was so deficient in firmness and solidity as to be inadequate to sustain a building under the conditions which are usual in the conduct of necessary public works upon the highway, the jury must find for the municipality.

Argued April 8, 1895. Reargued June 5, 1895. Appeal, No. 102, Jan. T., 1893, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 737, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for injuries to a dwelling house alleged to have been caused by the construction of a sewer. Before ARNOLD, J.

At the trial it appeared that in 1893 the city constructed a main sewer upon Nineteenth street opposite to plaintiff's house. During the progress of the work the walls of the house sank, and cracks appeared in many parts of it. The evidence showed that the house had been built upon what is called "made ground,"—that is, that the natural level of the lot was below the established grade of the city and was used as an ash dump, and place of deposit for rubbish of all kinds. The material used was described by one of the witnesses as "hoopskirts, brickbats, oyster shells, tomato cans, old barrels, . . . . dead dogs and cats."

The court charged the jury as follows:

The plaintiff in this case seeks to recover damages for injury which she says has been done to her house by the construction of a main sewer in front of it. The law of Pennsylvania on this subject is to be found in the constitution of 1874, and is as follows: "Municipal and other corporations and individuals

invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements."

The plaintiff claims, not that any of her property had been taken, in the sense that she has been deprived of its use, but that it has been injured by the construction of a public work in front of her property. She alleges that she bought this property in the year 1891, and has been occupying it ever since. That when she bought it, it was in good condition and so continued until after the main sewer was built in front of it, about July, 1893.

It appears that her house was built upon made ground. The natural level of the earth was below the established grade of the city, and in order to bring it up to the established grade, to make it available for a building lot, the former owner of the entire lot gave the privilege to the ashman to use it for an ash dump, thus bringing his ground up to the street level. Upon that made ground, as I have said, the plaintiff's house was built. It has been testified here, and not contradicted, that the ground upon which this house is built is made ground, and whether it was eighteen feet of made ground, or twenty feet, or more or less, perhaps does not make so much difference.

A trench for this sewer was dug down about thirty feet in front of the plaintiff's house, and the top of the sewer, according to the plan shown here, was about twenty-five feet below the street level.

It is not averred that the sewer was not built with as much care, precaution, and regard for the safety of the adjoining property as was possible. It was dug to a proper depth, the sides were shored up, timbers being used for shoring, which timbers were left in after the ditch was filled up, so that I understand there is no complaint in this case of improper, careless, or negligent construction of the sewer.

The plaintiff bases her right to recover squarely upon the claim that her property was injured because of the construction of the sewer.

To that claim, the city interposes two defenses: first, that there is no liability at all, alleging that the house has become cracked and injured by reason of the foundation upon which

it was built—that is, the made ground upon which it was built settling, and that in the settling of the ground the house has become cracked and wrenched. The second defense is as to the amount of damages sustained, in case you shall be of the opinion that the injury to the house is the natural consequence of the building of the sewer.

[You will have to determine, in the first place, whether the house has been injured by the construction of the sewer. If you are of the opinion that it has been injured, not by the construction of the sewer, but by the faulty foundation—the foundation of made ground upon which it was built—and that the injury was caused by the settling of the house upon its own foundation, and not caused by the sewer at all, of course there is no right to recover in this case.

If, on the other hand, you believe that the house has been caused to settle, and that the walls have cracked because of the sewer being constructed in front of it, then you will proceed to inquire and determine how much the plaintiff ought to be allowed in damages for that injury.] [3]

The plaintiff has called numerous witnesses as to the damages, and their estimations have run from $1,800 to about $3,000. It is not necessary for you to take these figures and average them, and then give an average sum as your verdict. That is not the right way to render a verdict. The question is, what witnesses do you believe—whose testimony convinced you of what is a proper award? You will have to inquire, in the first place, whether it would require as much as some of the witnesses have said it would to repair the house—that is, whether it is necessary to take down the walls, for some of them have said that it can be repaired and put in substantial, good condition to make it as valuable as it was before by simply repairing it without taking down the walls.

Some of the witnesses have testified that they could take the walls down and rebuild it, and that it would cost $1,800; others say $2,500, and some as high as $3,000.

On the other hand, the witnesses for the defendant say that it is not necessary to take the walls down at all; that all that is necessary to do is to fill up those cracks and repair the damage, and to do all that would cost from $250 to $500—one of the witnesses making it $250, another $500. If you are of the

opinion that the plaintiff ought to receive damages in this case, then you will determine how much will compensate her. Ought she to be allowed a sum of money which would enable her to take down the walls and rebuild the house, or would she be fully compensated if she were allowed enough to put the house back in as substantially good condition as it was before.

Witnesses have testified that the front wall of this house is out of plumb four and a half inches. The plans show that. Mr. O'Donnell has testified that that could not have been caused, in his judgment, by the sewer, because the crack is only about three-quarters of an inch wide, and if the front wall went out four inches, it would make a bigger crack than three quarters of an inch. That seems to be logical. According to the plan, I find that at the third story windows of those houses there is only forty-nine feet six inches, between the houses on the two sides of the street, whereas there should have been fifty feet. Down at the bottom, looking at the plan, you will find that between two houses on different sides of the street there is a space of forty-nine feet, ten and one half inches, there being one and one half inches less in the street than there ought to be. They do not seem to have been very cautious about the street line even in building the houses, and appear to have encroached somewhat on the highway.

Mr. O'Donnell says that a wall may be out of plumb four inches, and still no harm be done to a house. Perhaps you yourselves may have had some experience on that subject, and know that that is the case with a good many houses. I have some in mind myself where the walls are four and a half inches at least out of plumb, and they still remain and sustain a very strong building. You will determine, therefore, whether you think these walls ought to be torn down and leveled, in order to restore the building, and if so, how much you will allow for it. If you think that the house has been injured by the construction of the sewer, but that it can be put into good condition without taking down the walls, that it can be repaired by a sum of money fixed by the witnessess at from $250 to $500 or thereabouts, you may allow that amount. [I submit it to you as jurors to determine the questions, first, was the injury to the house caused by the constuction of the sewer? If it was not, and if it was caused by the defective foundation, there

is an end of the plaintiff's case, and the verdict ought to be for the defendants. If it was caused by the construction of the sewer, you will then inquire how much you will allow as damages to compensate the plaintiff for the injury. That is all there is in this case, and to you as jurors I submit it.] [4]

Defendant's points were as follows :

2. If the jury find that the condition of the ground on which the house in question was built was such as to make it naturally incapable of sustaining the weight of the building without settling, on the opening of a ditch, with full care in the cartway, to a depth of fifteen to eighteen feet, they must find for defendant, so far at least as injury to the house is concerned. *Answer :* Refused. [1]

3. If the jury find that the injury to the house complained of was due to the weight of the building upon the sewer ditch, the city is not liable for damages therefor, if the work was properly done and without negligence. *Answer :* Refused. [2]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned,* among others, were (1–4) above instructions, quoting them.

*E. Spencer Miller,* assistant city solicitor, *John L. Kinsey,* city solicitor, with him, for appellant.—Support to the soil in its natural condition is the extent to which the liability of an adjoining owner goes for lateral or subjacent support: McGettigan v. Potts, 149 Pa. 155 ; Caledonia R. R. v. Sprout, 2 Macq. 449 ; Gilmore v. Driscoll, 122 Mass. 199 ; Parker v. Boston & Maine R. R., 3 Cush. 107 ; Trowbridge v. Brookline, 144 Mass. 139.

The city is not liable for consequential damages caused by the construction of a sewer: Hougan v. Milwaukee & St. Paul R. R., 35 Iowa, 558 ; Quincy v. Jones, 76 Ill. 231 ; Transportation Co. v. Chicago, 99 U. S. 635 ; McDevitt v. Gas Co., 160 Pa. 367.

*Charles H. Edmunds, Henry F. Walton* with him, for appellee.—The laying of a vast main relief sewer is the enlargement of a highway, and brings this case squarely within the provisions of section 8, article XVI: City v. Brill, 167 Pa. 1.

The second proposition of the appellant is that there was no exercise of the right of eminent domain in the construction of the sewer, and hence the remedy given by article XVI. sec. 8, of the constitution has no application.   By this we understand the appellant to allege that it is only when the construction of public works involves a taking of other property than that injured that the constitutional remedy applies.   But this proposition squarely conflicts with Chester Co. v. Brower, 117 Pa. 647 ; Borough of New Brighton v. U. P. Church, 96 Pa. 331 ; Power v. Borough of Ridgeway, 149 Pa. 317 ; Fredericks v. Penna. Canal Co., 148 Pa. 317 ; Ogden v. Philadelphia, 143 Pa. 430 ; Jones v. Bangor, 144 Pa. 638 ; In re Towanda Bridge Co., 91 Pa. 216 ; 2 Kent's Com. 338 ; Cooley's Const. Lim. 662 ; Mt. Pleasant Borough v. B. & O. R. R., 27 W. N. C. 177 ; Phila. v. P. W. & B. R. R., 33 Pa. 41.

Land acquired by a municipality under the exercise of the power of eminent domain is taken with the distinct agreement imposed by the constitution and accepted by the municipality, that its ownership involves the duty of making just compensation for all injuries resulting from the taking or enlargement thereof, or the construction of public works and improvements thereon : O'Brien v. City, 150 Pa. 589 ; Lewis on Eminent Domain, sec. 226 ; U. S. v. Alexander, 148 U. S. 186 ; Parker v. Boston & Maine R. R., 3 Cush. 107 ; Marsden v. Cambridge, 114 Mass. 490.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 7, 1895 :

The beneficial plaintiff, Mrs. Ladd, owns a three-story brick dwelling, erected in 1890 at No. 2243 North Nineteenth street, Philadelphia.   Her house and the street in front thereof were on what is known as "made ground," filled in from time to time to the depth of about twenty feet.   In 1893, under an ordinance authorizing the improvement, the city dug a trench, twenty-five or thirty feet deep, in Nineteenth street, in front of the house and within four or five feet of the eastern curb-line, and constructed therein a main public sewer about five feet in diameter.   This sewer was not intended to drain plaintiff's premises, which, for all sewage and drainage purposes, were connected with a local sewer on the westerly side of same street.

In view of the instructions under which the case was submit-

ted to the jury, their verdict in favor of the plaintiff necessarily implies the finding of certain facts, among which are, that plaintiff's house was well built on a sufficiently safe and solid foundation, and was in good condition when the construction of the sewer was commenced, but, during the progress of that improvement, the foundation wall of her house cracked, the front wall settled away from the side walls and became out of plumb, the back building partially separated from the front building and an opening or crack appeared at that point, extending from the foundation to the third story, the front pavement and steps thereon became detached from the front wall, the water pipes were displaced, and the house settled and leaned towards the street. Plaintiff, alleging that these and other injuries to her property were caused by the excavation, etc., in constructing said public sewer, brought this action to recover compensation for the damages thus sustained. An agreement of counsel was filed that the case should be considered as if arising on an appeal from the award of viewers under the act of March 16, 1891, or, on the election of the plaintiff, as an ordinary action of trespass.

The case was carefully and fairly submitted to the jury. The learned trial judge instructed them that, if plaintiff's house was injured, "not by the construction of the sewer, but by the faulty foundation—the foundation of made ground on which it was built—and that the injury was caused by the settling of the house upon its own foundation," the plaintiff could not recover. In affirming defendant's fourth point for charge, he also instructed them, in the language thereof, thus: "If the jury find that the ground where the house in question was erected was so deficient—from whatever cause—in firmness and solidity as to be inadequate to sustain a building under the conditions which are usual in the conduct of necessary public works upon the highway, they must find for the defendant, so far at least as the injury to the house is concerned." He further instructed the jury, in substance, that if they found the injuries to plaintiff's house were caused by the excavation and construction of the sewer in front thereof, they should award damages to compensate her for the injury. Their verdict awarding damages to plaintiff necessarily implies that the jury found as a fact that the injuries complained of were the direct and proximate result

of the excavation and construction of the sewer, and further, that they were not caused by the alleged insecure and defective character of the made ground on which her house was erected.

It having thus been clearly established by the verdict that the work of constructing the sewer and not the character of made ground on which the house was erected was the cause of the injury, the case is within the very letter as well as the spirit of the constitutional mandate which requires municipal and other corporations, etc., to "make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements." To hold otherwise would defeat one of the main objects of that provision.

In its controlling principles, this case does not materially differ from O'Brien v. Philadelphia, 150 Pa. 589; Mellor v. Philadelphia, 160 Pa. 614, and other cases in the same line, and is virtually ruled by them.

Neither of the assignments of error is sustained.

Judgment affirmed.