Rawls *v.* Central Bucks Joint School Building Authority.

Submitted on briefs January 8, 1973, to President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas F. J. MacAniff,* with him *Eastburn and Gray,* for appellant.

*Brenden E. Brett,* with him *Pratt, Clark, Guthright & Price,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, May 1, 1973:

This is an appeal from an Order of the Court of Common Pleas of Bucks County dismissing preliminary objections to a petition for the appointment of viewers.

The appellee, Margaret Rawls ("Rawls"), owns residential property in Buckingham Township, Bucks County. In May of 1967, appellant, the Central Bucks Joint School Building Authority ("Authority"), entered into a contract for the construction of a sewerage treatment plant on its property, incident to which was the construction in September, 1968, of a twenty-seven inch in diameter outfall line in the legal right of way of Anderson Road which was contiguous to the Authority's property. This outfall line ran parallel to the Authority's property in the legal right of way for approximately one thousand feet, after which it continued in the legal right of way for approximately three hundred additional feet. At this point, the line emptied into a stream which traversed the legal right of way at right angles. This stream flows onto Rawls' property. Rawls alleges that the emptying of the outfall line into the stream on or about September 2, 1969, has created the following conditions: a quantity of effluent greater than any surface water which may otherwise

have flowed onto her land; unpleasant odors; erosion of the stream bank and bed; an unsightly thick growth of weeds on both banks of the stream; a danger of raw sewage being discharged into the stream; and the existence of a conspicuous sewer pipe, the operation and presence of which have depreciated the value of appellee's property.

On the basis of these averred developments, on April 16, 1971, Rawls petitioned for the appointment of viewers pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-502(e), alleging compensable injury to her property for which no declaration of taking had been filed. After viewers were appointed, the Authority filed preliminary objections asserting, *inter alia,* the failure of Rawls to set forth what property was condemned, the absence of any condemnation of Rawls' property, the lack of a compensable injury, and the fact that there had been no taking. These preliminary objections were sustained, the lower court holding that no compensable injury had been alleged. Rawls filed an amended petition setting forth the alleged compensable injury; viewers were appointed; the Authority filed a second set of preliminary objections identical to the first. The lower court dismissed the preliminary objections and the Authority brought this appeal.

There are two issues presently before this Court, the first of which is whether or not the dismissal of preliminary objections to a petition for the appointment of viewers where there has been no declaration of taking is an appealable order. The second issue goes to the sufficiency of the complaint, i.e., whether a compensable injury was alleged, taking the well-pleaded averments as true.

In *Jacobs v. Nether Providence Township,* 6 Pa. Commonwealth Ct. 594, 297 A. 2d 550 (1972), this Court discussed the role of preliminary objections in

the nature of a demurrer filed by the governmental body in response to the property owner's petition for viewers. Referring first to preliminary objections to a formal declaration of taking, we said that "the provisions of Section 406 [26 P.S. §1-406] manifest a legislative intent to have such matters judicially determined prior to further proceedings thereby avoiding what might prove to be the unnecessary expenditure of considerable amounts of money and time incident to proceedings before viewers and to a jury trial on appeal from a viewer's report. [Citations omitted.]" 6 Pa. Commonwealth Ct. at 598-599, 297 A. 2d at 553. We concluded that the role of preliminary objections testing the legal sufficiency of a petition for the appointment of viewers alleging a de facto "taking" or compensable injury "should be of the same scope and serve the same purpose. . . ." 6 Pa. Commonwealth Ct. at 599, 297 A. 2d at 553.

Our position as stated above and recent case law support the appealability of the dismissal of preliminary objections in such cases. The Supreme Court in *Faranda Appeal,* 420 Pa. 295, 216 A. 2d 769 (1966), and *Hanni Appeal,* 420 Pa. 289, 216 A. 2d 774 (1966), treated orders dismissing preliminary objections of a condemnee (where declarations of taking had been filed) to be final and, therefore, appealable. *Hanni* specifically focused on this issue. The Court there said, "When the Order of a lower Court so restricts a party's further action as virtually to put (him or) it out of Court upon the question or cause which is being litigated, the Order is final and therefore appealable." 420 Pa. at 292, 216 A. 2d at 776. If we are to be legally and logically consistent with our opinion in *Jacobs, supra,* an order dismissing preliminary objections to a petition for viewers alleging a de facto "taking" must likewise be final and appealable. As we said in *Nelis v. Redevelopment Authority of Allegheny County,* 4 Pa.

Commonwealth Ct. 533, 538, 287 A. 2d 880, 883 (1972), the condemnor's attempted exercise of the power to condemn "is precisely the type of issue which the legislature intended to be preliminarily determined by the court . . . before the matter proceeded to the amount of just compensation and the property interests entitled thereto."

With regard to "formal" condemnations, the Supreme Court has stated, "[I]n Faranda [supra], we permitted an appeal from an order dismissing condemnee's preliminary objections under §406(a) because, in our view, such an order is final since it finally resolves, to the satisfaction of the lower court, the question of the validity of the taking, which proceeding we regard as separate and distinct from the proceedings established in the Code for the determination of damages in condemnation cases. Hence, a condemnation case involves two proceedings—the first to determine the propriety of the taking, the second to determine damages recoverable by the condemnee. Each is an appealable determination with which an aggrieved condemnee may take issue before the appropriate appellate court." *Valley Forge Golf Club v. Upper Merion Township,* 422 Pa. 227, 230, 221 A. 2d 292, 293 (1966). This must necessarily apply to "de facto" cases as well. Indeed, in *Commonwealth's Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A. 2d 909 (1971), this Court allowed such an appeal by the Department of Highways from the lower court's dismissal of its preliminary objections to the appointment of viewers sought by a landowner. The issue there, as here, was whether the petition for viewers sufficiently stated a cause of action for compensable injury.

*Dames v. Pottstown Borough,* 212 Pa. Superior Ct. 178, 239 A. 2d 815 (1968), does not compel a contrary conclusion. In concluding that the order dismissing preliminary objections to a petition for viewers (pur-

suant to §502(e) of the Eminent Domain Code, 26 P.S. §1-502(e)), was interlocutory and, thus, non-appealable, the court very narrowly distinguished *Hanni Appeal, supra,* and *Faranda Appeal, supra,* in that the alleged condemnation in *Dames* occurred prior to September 1, 1964, the effective date of the Eminent Domain Code; for this reason, Article IV of the Code, of which §406 (26 P.S. §1-406) is a part, was not applicable, thereby eliminating any statutory authorization for an appeal. It should be noted that in the case presently at issue before this Court, the alleged injury occurred "on or about September 2, 1969."

The concept of a de facto "taking" is yet new and insufficiently defined. When such an injury is alleged, courts generally feel compelled to quote from the constitution. Unwilling to break from this tradition, we note that article I, section 1, of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those . . . of acquiring, possessing and protecting property. . . ." Article I, section 10, states, ". . . [N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." And article 10, section 4, says, "Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction."

With these fundamental principles in mind, we have said that the theory of a de facto "taking" "has been responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society *may* so substan-

tially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it." *Hazleton Redevelopment Authority v. Hudock,* 2 Pa. Commonwealth Ct. 670, 675, 281 A. 2d 914, 917 (1971). In *Crosstown, supra,* where we affirmed the lower court's dismissal of the Commonwealth's preliminary objections, we expressed our concern about "a course of action or conduct on the part of a government, clothed with the power of eminent domain, which may have deprived a property owner of real and material rights in and enjoyment of property ownership. If such be the case we believe the property in question has been injured within the meaning of the Eminent Domain Code." 3 Pa. Commonwealth Ct. at 10, 281 A. 2d at 913-914.

In providing for redress against a governmental unit, the Eminent Domain Code thereby avoids obstacles associated with sovereign immunity, a doctrine our Supreme Court has kept vital. Since the Legislature has provided for a remedy for governmental de facto "takings," we should not allow the possibility of future cases which may try to extend the precedent to cause us to refrain from applying this remedy. Taking as true all well-pleaded facts in the petition, we believe the instant case is one for which Section 502(e)[1] [26 P.S. §1-502(e)] was intended. Difficulties related to proof of the alleged injury should not color the judgment as to whether a compensable injury has in fact been alleged.

---

[1] 502(e) : "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury."

The case at bar involves more than the planning of public improvement projects and factually more than any other de facto case we have yet confronted. Although not required (see *Hudock, supra*), the appellee Rawls has alleged what amounts to a physical intrusion as a result of the Authority's outfall line. It is averred that the stream on the land now contains a quantity of effluent greater than any surface water which may otherwise have flowed onto her land. To this watery invasion are attributed unpleasant odors, erosion of the stream bank and bed, unsightly weed growth, and a depreciation in property value.[2] To hold that these alleged facts do not constitute a cause of action under Section 502(e), would be to ignore the language of the Act. We do note, however, that there can be no relief for prospective, speculative injuries—here the potential danger of raw sewage being discharged into the stream.

There is a line of trespass cases holding that a municipality can be liable for injuries sustained by landowners as a result of sewer construction and particularly where the municipality adopts a stream as part of its sewage system.[3] This latter principle has been affirmed recently in *Ambler Borough v. Shepherd,* 443 Pa. 375, 278 A. 2d 886 (1971). Both Rawls and the Authority have cited *Hereda v. Lower Burrell Township,* 159 Pa. Superior Ct. 262, 48 A. 2d 83 (1946). In this eminent domain case, a municipality was held

---

[2] The possible effect of Section 604 of the Eminent Domain Code [26 P.S. §1-604] dealing with compensation for a diminution in fair market value, was referred to in footnote 5 of *Crosstown, supra.*

[3] *Owens v. Lancaster,* 182 Pa. 257, 37 A. 858 (1897) ; *Blizzard v. Danville Borough,* 175 Pa. 479, 34 A. 846 (1896) ; *Ladd v. Philadelphia,* 171 Pa. 485, 33 A. 62 (1895) ; *Good v. Altoona,* 162 Pa. 493, 29 A. 741 (1894) ; *Torrey v. Scranton City,* 133 Pa. 173, 19 A. 351 (1890).

liable for the resulting injury where by its acts "the water and sewage were accumulated and diverted in bulk into an artificial conduit and a channel and then discharged in volume on plaintiffs' land where it would not otherwise have been discharged . . . although plaintiffs were under servitude of receiving the natural drainage." 159 Pa. Superior Ct. at 265, 48 A. 2d at 84. Given the above cited trespass cases and the facts in *Hereda*, Rawls has sufficiently alleged a compensable injury, and the existence of possible alternative causes of action provides no reason not to apply provisions of the Eminent Domain Code in situations for which they were intended.

As the Supreme Court recognized in *Commonwealth Appeal*, 422 Pa. 72, 221 A. 2d 289 (1966), a "taking" occurs when the landowner is deprived of the use and enjoyment of his or her property. Mr. Justice, later Chief Justice SCHAFFER, said in *Sansom Street, Caplan's Appeal*, 293 Pa. 483, 490, 143 A. 134, 136 (1928), "The governing principle is accurately stated in 20 Corpus Juris, 566, 'There need not be an actual, physical taking, but any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a *lawful* manner may constitute a taking for which compensation must be made to the owner of the property.' " [Emphasis added.] We believe that the alleged increased flow of effluent into Rawls' stream and the resulting odors, erosion, et al., may have substantially deprived her of "real and material rights in and enjoyment of property ownership" within the meaning of the principle enunciated in *Crosstown, supra,* thereby constituting a compensable injury under the Eminent Domain Code. A word of caution, however, is warranted—this holding, as in other de facto cases, is founded on the unique interrelationship of the unusual and particular facts as alleged herein. It is solely with these exceptional cir-

cumstances in mind that we so find there to be a compensable injury as alleged.

The order of the Court of Common Pleas of Bucks County dismissing the Authority's preliminary objections is, therefore, affirmed.

Affirmed.