Sunbeam Coal Corporation, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Game Commission, Appellee.

Argued May 3, 1978, before President Judge Bowman and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge DiSALLE did not participate.

*Leo M. Stepanian,* with him *Brydon & Stepanian,* for appellant.

*Richard L. McCandless,* with him *Dillon, McCandless, King & Kemper,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, September 8, 1978:

Sunbeam Coal Corporation (Sunbeam) has appealed from an order of the Court of Common Pleas

of Butler County which sustained the preliminary objections of the Pennsylvania Game Commission (Commission) to Sunbeam's motion to appoint a new board of view in this eminent domain proceeding. For the reasons stated below, we reverse and remand.

The protracted procedural history of this litigation is presently lumbering into its twelfth year. On June 2, 1967, the Commission adopted a resolution wherein it resolved to "acquire *by condemnation a fee simple estate or interest* in and to all tracts of land in the Glades Project situate in Cherry, Concord and Washington Townships, Butler County, including all tracts not under option and all of the rights, titles and interests of [inter alia] . . . Kenneth Hindman. . . ." (Emphasis added.) On July 13, 1967, the Commission filed a declaration of taking against Hindman.[1] The declaration of taking, after citing to the authorization of the June 2, 1967 resolution and setting forth a detailed survey description of the tract of land, contained the following paragraph:

> 7. The nature of the title or interest hereby appropriated and acquired by the Condemnor [Commission] is *the surface only* of the land hereinbefore described and of each and every part thereof, *excepting the outstanding estates or interests in the minerals* (including oil and gas) in, on and underlying the same with the mining rights as heretofore reserved or conveyed in prior deeds of record, if any.... (Emphasis added.)

On August 18, 1967, a lease was executed between Hindman and Sunbeam, whereby Sunbeam acquired

---

[1] The proof of service attached to the declaration of taking reveals that notice of the declaration was served by registered mail upon Hindman at his Frederick, Maryland residence on October 20. 1967.

the right to mine "all the limestone in, under and upon" Hindman's tract of land. The lease agreement was recorded on September 7, 1967.

On September 4, 1968, Sunbeam filed a petition for the appointment of viewers which represented the following: (1) that the Commission, by its June 2, 1967 resolution, resolved to acquire by condemnation a fee simple interest in Hindman's land; (2) that Sunbeam acquired a lease of the limestone in, under and upon said tract on August 18, 1967; and (3) "[t]hat no Declaration of Taking has yet been filed by the Commonwealth of Pennsylvania, Pennsylvania Game Commission against Sunbeam Coal Corporation nor has any notice been given to Sunbeam Coal Corporation of a Declaration of Taking." The court promptly appointed a board "to view the premises, hold hearings, determine the value of the condemned interest, and make Report to this Court in accord with the law."

The Commission subsequently filed a pleading entitled "Preliminary Objection in the Nature of Motion to Dismiss Petition and Discharge Viewers" in which it was alleged that the limestone interest had not been condemned; that, in any event, Sunbeam had no interest in the limestone at the time of condemnation; and that Sunbeam suffered no compensable injury justifying the appointment of viewers. Upon consideration of briefs and oral argument, the court overruled the Commission's preliminary objections on November 6, 1968. No appeal from this order was taken by the Commission.[2]

---

[2] An order dismissing preliminary objections to a petition for viewers asserting a de facto taking is a final and appealable order. *Rawls v. Central Bucks Joint School Building Authority*, 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973). We recognize, of course, that *Rawls* was decided in May, 1973, postdating by four and one-half years the lower court's November, 1968 order.

For reasons undisclosed in the record, but possibly because of the pendency of proceedings between Hindman and the Commission discussed below, the board of view did not view the premises or conduct a hearing in this case until April, 1973. Subsequent to the April, 1973 view and hearing, but prior to the making or filing of a report, the chairman of the board of view died. Another hiatus of action ensued. Then, on July 26, 1976, Sunbeam submitted to the court a "Motion," at the same docket number as its original petition for appointment of viewers, which, after setting forth that no report had been filed by the board, requested the court "to appoint a new Board of View."

By order dated August 30, 1976 and docketed February 18, 1977, the court appointed a second board. Also docketed on February 18, 1977, were the Commission's "Preliminary Objections to *Petition* to have a New Board of View Appointed." (Emphasis added.) These preliminary objections were, in part, nearly verbatim repetitions of the preliminary objections filed by the Commission in 1968. Additionally, it was alleged:

3. That at the Declaration of Taking against Kenneth Hindman . . . and subsequent proceedings thereon, there was a relinquishment of the subsurface and minerals by the Commonwealth of Pennsylvania filed and a *final deed of confirmation* of the surface only from Kenneth Hindman to the Commonwealth . . . so that there has been no condemnation of of any minerals or limestone whatsoever.

. . . .

5. That the original petition to appoint viewers should be dismissed on its face for the reason that it does not allege a de facto taking and the records in the Court of Common Pleas

of Butler County, together with the Prothonotary and Recorder's Offices of Butler County, indicate and exclusively show that there was no taking of a fee simple estate or interest but only a taking of the surface. (Emphasis added.)

Sunbeam filed a motion to dismiss these preliminary objections on the ground that identical preliminary objections had been overruled in 1968. The lower court determining that its order of November 6, 1968 dismissing the first set of preliminary objections was "in error," sustained the Commission's preliminary objections for two basic reasons: (1) the court's examination of certain documents in the Hindman proceedings discussed below convinced the court that Sunbeam had no interest in the limestone until after the "condemnation" occurred; and (2) Sunbeam's original petition "does not allege a de facto taking." Sunbeam has appealed this order.

Before addressing the merits of Sunbeam's appeal, certain relevant developments in the proceedings between Kenneth Hindman, lessor of the limestone rights, and the Commission must be briefly related. Hindman had, in November, 1967, filed preliminary objections to the Commission's declaration of taking, alleging inadequate compensation for the value of his land. After briefs and argument the preliminary objections were dismissed. The Commission petitioned for the appointment of viewers and in its petition referred to the declaration of taking "by which your Petitioner *took title in fee simple* by virtue of its power of eminent domain. . . ." (Emphasis added.) A board of view was appointed, viewed the premises, and held a hearing at which neither Hindman nor his then counsel appeared. The report and award of viewers was submitted to the court in April, 1968. In May, 1968, Hindman, having retained new counsel

appealed from the report of viewers on the ground that the amount of the award was inadequate. In July, 1968, Hindman's new counsel filed a document entitled "Motion for Leave to File Preliminary Objections Nunc Pro Tunc" in which it was alleged that Hindman's first counsel failed to ascertain the discrepancy between the "fee simple" language of the June 2, 1967 authorizing resolution and the "surface only" language of the declaration of taking. The motion alleged that "[i]n three other cases involving the Taking by said condemnor, your Honorable Court has ordered the Game Commission to amend its Declaration of Taking to bring the same in accord with the Resolution of the Game Commission dated June 2, 1967." A rule was issued on the Commission to show cause why Hindman should not be allowed to file preliminary objections nunc pro tunc, but, "after lengthy conference in chambers," Hindman's counsel withdrew the motion for the rule, and the court dismissed said rule.

By this point, it must be apparent that considerable confusion had been spawned in the Hindman case by the Commission's failure to maintain a consistent position with regard to the nature of the interest which it sought to acquire by its declaration of taking. In an attempt to clarify this confusion, the Commission filed in the Hindman case on February 10, 1969, a declaration of relinquishment in which the following statement appears:

> The Condemnor herein hereby abandons and relinquishes any and all right, title and interest *it may have acquired* by virtue of the abovementioned condemnation in the estates or interests in the minerals, including oil and gas, in, on and underlying the same, with the mining rights as heretofore reserved or conveyed in prior deeds of record, if any, from the taking

described in the Declaration of Taking, and hereby affirms that the original Declaration of Taking was filed for the surface of the land only. (Emphasis added.)

The Hindman case was brought to a close in June, 1970, when Hindman, as grantor, conveyed to the Commission, grantee, his interest in the surface estate of his land. The deed from Hindman to the Commission contains the following language:

NOW, THEREFORE, the said Grantor for and in consideration of the sum of FOUR THOUSAND NINE HUNDRED DOLLARS ($4,900.00), lawful money of the United States of America, unto him well and truly paid, the receipt whereof is hereby acknowledged, *and in lieu of the herein recited condemnation proceedings,* has granted, bargained and sold by these presents does grant and convey to the Grantee, its successors and assigns, the surface estate only, in all that certain tract of land situate in . . . [tract described]. (Emphasis added.)

In view of the express language of the deed that the conveyance was in lieu of condemnation, we have some difficulty with Commission's characterization of this document in its preliminary objections as a "deed of confirmation."

It appears to us that Sunbeam throughout these proceedings has attempted to state a cause of action for the de facto taking of the subsurface rights. In its petition to appoint viewers of September 4, 1968, it alleged that "no Declaration of Taking has yet been filed by the . . . Commission against Sunbeam. . . ." Section 502(e) of the Eminent Domain Code,[3] 26 P.S. §1-502(e), employs identical language in reference to what has come to be known as a "de facto taking":

___

[3] Act of June 22, 1964, Special Sess., P.L. 84, *as amended.*

"If there has been a compensable injury suffered and no declaration of taking therefor has been filed. . . ."

The role of a court of common pleas in de facto condemnation cases is now well-settled. In *Petition of Ramsey*, 20 Pa. Commonwealth Ct. 207, 210, 342 A.2d 124, 126 (1975), we stated:

> In Jacobs v. Nether Providence Township, 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972), this Court delineated the responsibilities of lower courts when confronted with a petition for appointment of viewers to which preliminary objections had been filed. Therein we held that if a preliminary objection in the nature of a demurrer was filed, the lower court must first decide whether as a matter of law the averments of the petition taken as true, are sufficient to state a cause of action of de facto taking. If not, the preliminary objections must be sustained and the petition dismissed *or possibly allow the petitioner to amend his pleading.* If the averments, taken as true, might establish a de facto taking, the lower court must take evidence by deposition or otherwise so that a judicial determination might be made. If the averments on their face establish a de facto taking, then the preliminary objections must be dismissed. . . . (Emphasis added.)

The lower court sustained the preliminary objections utilizing the following reasoning:

> The Petition To Appoint Viewers in this case does not allege a de facto taking. Although authorized to take a fee simple interest, the Game Commission condemned only the surface. If there was an actual taking of the limestone because of flooding and inaccessibility or for any other reason, it has not been pled.

Although we recognize that our case law states only that a lower court can "possibly allow" an amendment of a petition for the appointment of viewers, thus rendering amendment a discretionary act, we believe that if ever there was a case in which amendment should have been permitted, it is this case. Ponderous subtlety exists in this case in terms of passage of title, and this situation is directly attributable to the Commission's action in the Hindman proceeding with which this case is inevitably intertwined: by first authorizing in fee simple, then purportedly condemning the surface only; by subsequently alleging in a petition to appoint viewers that it had, in fact, condemned in fee simple; by filing a declaration of relinquishment as to any subsurface rights it may have acquired; and finally by accepting a deed for the surface only "in lieu of condemnation."

Sunbeam filed its petition to appoint viewers in September, 1968. The Commission, in its second set of preliminary objections, docketed February 18, 1977, made representations regarding post-September, 1968 developments in the Hindman case which it alleged to be dispositive of this case. To permit the Commission to incorporate into a pleading subsequent developments in a collateral case and at the same time deny Sunbeam an opportunity to amend its petition, is, we believe, unfair.

Our holding is narrow. Given the complex and unique factual matrix of this case, the lower court abused its discretion in not permitting Sunbeam to amend its petition for the appointment of viewers. We note that Sunbeam's September 4, 1968 petition leaves much to be desired in terms of the specificity of fact pleading required by the Pennsylvania Rules of Civil Procedure. We reverse the order of the lower court sustaining the Commission's preliminary objections, and remand to the lower court where Sun-

beam shall be afforded an opportunity to file an amended petition to allege, if it can, sufficient facts which if proven would constitute as a matter of law a de facto taking.

## ORDER

Now, September 8, 1978, the order of the Court of Common Pleas of Butler County sustaining the Pennsylvania Game Commission's preliminary objections is reversed. This case is remanded to said court where Sunbeam Coal Corporation shall be permitted to file an amended petition for the appointment of viewers.