**PALM CORPORATION**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided Jan. 27, 1997.

John V. Rovinsky, Assistant Counsel, Scranton, for appellant.

Maurice A. Cardone, Nanticoke, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Department of Transportation (DOT) appeals from the order of the Court of Common Pleas of Luzerne County that denied its preliminary objections to the petition for an appointment of a board of viewers filed by the Palm Corporation. We reverse.

In 1942, DOT condemned an eighty-foot wide strip over a railroad track for the purpose of erecting a bridge which became part of Route 309.[1] (1942 condemnation) The 1942 condemnation included only the land on which the bridge supports were placed and an easement over the railroad bed and did not make the right of way limited access.[2]

In 1963, DOT again condemned land under the Route 309 bridge but this time enlarged the taking to include a 200–foot right-of-way. (1963 condemnation) The 1963 condemnation was made in conjunction with two other takings for Interstate 81 (I–81) which intersected the subject property. This 1963 condemnation created five landlocked parcels with only the right of the railroad to pass beneath. DOT condemned the land as a limited access highway area. The Public Utility Commission approved the condemnation against Central Railroad of New Jersey as holder in fee; however, Central Railroad had only a leasehold interest. Most likely Reading Railroad owned the subject property in fee at this time.

In April 1979, DOT entered into Agreement No. 63912 with Reading Railroad, whereby the railroad agreed not to sell the railroad line without first offering it to DOT.

However, in 1980, Reading Railroad sold Patrick Cooney the fee interest in the railroad bed and land on each side of the bed approximately 200 feet in width, without first offering it to DOT per its Agreement No.63912.[3] The deed[4] did contain an "Excepting and Reservation" clause which reserved to the grantor, Reading, the right to operate the rail lines, and ownership of the tracks and railroad easement beneath the bridges unless abandoned for eighteen months. Cooney also took the property subject to any public roads and the rights of the public therein, any streams, any easements or agreements of record. Palm Corporation subsequently purchased the parcel from Cooney.[5]

In 1983, DOT, in lieu of condemnation, purchased, via quitclaim deed, Reading Railroad's interest in the rail lines for $100,000. Reading Railroad was the same company which conveyed its fee interest to Cooney. Thus, DOT received only the interest which Reading Railroad excepted and reserved out of Cooney's deed, an easement to operate a subsidized rail service and the right to cross over other lands of Cooney's to repair the track. However, as per Cooney's deed, if at any time the railroad was abandoned and

---

**1.** This is property which Palm Corporation now claims to own in fee simple.

**2.** Limited access highway is a public highway to which owners and occupants of abutting property have no right of ingress or egress to, from or across. Section 1 of the Act of May 29, 1945, P.L. 1108, *as amended*, 36 P.S. § 2391.1.

**3.** This is part of the land over which DOT claims a limited access highway easement.

**4.** Neither party presented evidence that this deed was ever recorded. Trial court opinion at 3.

**5.** Palm Corporation, wholly owned by Cooney, operates a trailer park adjacent to the railroad bed and it was Cooney's intention to extend the trailer park in the event that rail service was abandoned.

remained so for a period of eighteen months then the reservation clause became null and void as the easement was never included in Cooney's deed.

■ In 1987, the Commonwealth began to make improvements on the Route 309 Bridge, and thus, allegedly trespassed on Palm Corporation's property.[6] The rail line continued to service Allan Industries until July 1991, when service ended because of an embargo. Before the end of 1991, Cooney removed the railroad tracks believing that he now owned the tracks as part of his land and that the railroad easement had been abandoned.[7]

In January 1992, Cooney filed a petition for appointment of board of viewers, claiming a de facto taking of his land because of the 1987 construction project. DOT filed preliminary objections which the trial court overruled, thus, granting Palm Corporation's petition. The trial court made several pertinent findings to support its decision: 1) that the 1942 and 1963 condemnations did not occur in the area where Route 309 crossed Palm Corporation's property, but rather where Route 309 intersects the I–81 bridge, and thus, failed to give DOT the right to repair the Route 309 bridge in 1987; 2) that DOT paid the incorrect railroad in 1963, when it acquired the larger easement, and thus, DOT did not acquire the right to access the property in 1987 to make the bridge repairs; and 3) that DOT authorized Allan Industries' dumping of debris on property owned by Palm Corporation, and thus, a de facto taking by DOT occurred.

6. These alleged trespasses would become the basis of Palm Corporation's claim of a de facto taking and its petition for appointment of viewers.

7. Palm Corporation claimed before the trial court that DOT had abandoned its railroad easement. However, formal abandonment did not take place until April 23, 1993, when the Interstate Commerce Commission (ICC) authorized the abandonment, more than one year after the petition for appointment of board of viewers had been filed. Formal abandonment is the only way a railroad easement can be extinguished. *See Burnier v. Department of Environmental Resources*, 148 Pa.Cmwlth. 530, 611 A.2d 1366 (1992). Thus, no abandonment occurred until 1993.

■ On appeal to this court,[8] DOT argues that the trial court abused its discretion in finding that the 1942 and 1963 condemnations did not occur in the area where Route 309 crossed Cooney's property. DOT also asserts that the trial court erred as a matter of law in holding that Palm Corporation had standing to claim a de facto taking because Palm Corporation was not the owner of the subject property at the time of the takings. Finally, DOT asserts that the trial court's holding that a de facto taking took place because DOT allowed Allan Industries to dispose of debris on Palm Corporation's property was improper as Palm Corporation did not plead such as a basis for petitioning an appointment of a board of viewers.

### 1942 AND 1963 CONDEMNATIONS

■ In 1942, DOT condemned an 80–foot easement through the subject property for purposes of building Route 309. (153a). This condemnation of an easement for highway purposes was signed by the then governor and recorded. (149a). In 1963, DOT condemned an additional 120–foot easement, in conjunction with two other takings for I–81, making the entire 200–foot right of way limited access. The only exception to the highway easement was the right of the railroad to operate under the Route 309 bridge. The trial court, however, found that DOT's 1987 repairs to the Route 309 bridge, i.e., the basis of the de facto taking, were done in an area which DOT had not condemned. The trial court asserts that DOT merely acquired the right to use the railroad track, which it did

8. When a trial court has dismissed preliminary objections to a petition for appointment of viewers, this Court's scope of review is whether the trial court abused its discretion or committed an error of law or whether findings of fact and conclusions of law are supported by substantial evidence. The trial court's findings will not be disturbed if supported by substantial evidence. *Berk v. Commonwealth, Department of Transportation*, 168 Pa.Cmwlth. 560, 651 A.2d 195 (1994). Substantial evidence is that evidence which would be accepted by a reasonable person to support the finding. *McDermond v. Foster*, 127 Pa.Cmwlth. 151, 561 A.2d 70 (1989).

without conducting a title search, whereupon DOT would have discovered Palm Corporation's ownership of the railroad track in fee simple. However, this assertion does not explain the trial court's determination that DOT's condemnation of land was in the "wrong location." (Trial court opinion at 9). In fact, this argument was never raised by Palm Corporation before the trial court and is now only mentioned in its brief to this court, with no supporting evidence or testimony. The trial court never points to any testimony or evidence which persuaded it to make such finding. We have carefully reviewed the testimony and evidence and can discover no substantial evidence to support such finding. The only expert testimony regarding the subject property was by Peter P. Narsavage, DOT's District 4 right-of-way administrator. He testified in depth to the area of DOT's taking and the work DOT performed on the Route 309 bridge in 1987. Therefore, we hold that the trial court abused its discretion in finding that DOT's condemnation was in the wrong location, as there is no evidence in the record to support such finding.

## PALM CORPORATION'S STANDING TO CHALLENGE CONDEMNATIONS

Before the trial court, DOT argued that Palm Corporation did not have standing to claim damages for its 1987 intrusion because any right to damages would have been personal to Reading Railroad, the apparent fee owner at the time of the 1942 and 1963 condemnations, and did not pass to Palm Corporation. The trial court found this argument to be without merit because "the construction on Route 309 over the lands of Palm [Corporation] did not begin until after the lands were acquired by Palm's immediate predecessor-in-title, Patrick Cooney." Trial court opinion at 10. However, DOT's initial construction of Route 309 began immediately after the 1942 condemnation and the upgrading of Route 309 took place following the 1963 condemnation. The trial court's ratio-

nale applies only if these condemnations were at the wrong location which we have held is a finding not supported by substantial evidence.

The right to compensation in eminent domain belongs solely to the owner of the property at the time of the taking and does not pass to subsequent owners. *Synes Appeal,* 401 Pa. 387, 164 A.2d 221 (1960); *Appeal of D.R.E. Land Developing Inc.,* 149 Pa.Cmwlth. 290, 613 A.2d 96 (1992). Further, a purchaser of land who has notice of an existing easement takes the land subject to that easement. *Brady v. Yodanza,* 493 Pa. 186, 425 A.2d 726 (1981); *Florek v. Commonwealth, Department of Transportation,* 89 Pa.Cmwlth. 483, 493 A.2d 133 (1985). Thus, even though DOT may have compensated the improper party in 1963,[9] only the owner of the property, Reading Railroad, had a cause of action at that time against DOT. *See Captline v. County of Allegheny,* 74 Pa. Cmwlth. 85, 459 A.2d 1298 (1983). The law does not allow subsequent owners, such as Palm Corporation, to challenge the taking. Palm Corporation certainly had notice of DOT's existing easement via the PUC filings and visually, as Route 309 passed over its property. *Appeal of Strong,* 400 Pa. 51, 161 A.2d 380 (1960). Therefore, we hold that the trial court erred in holding that Palm Corporation had standing to challenge DOT's 1987 repairs to Route 309 as being a de facto taking.[10]

## DUMPING OF DEBRIS— BASIS OF TAKING?

The trial court also found that DOT authorized the dumping of debris by Allan Industries and that Palm Corporation was "substantially deprived" of the development of its land, thus, causing a de facto taking. DOT asserts that this claim was not properly raised in the petition for appointment of a board of viewers and even if properly raised,

---

9. DOT compensated the lessee of the rail lines, Central Railroad of New Jersey, in 1963.

10. While we hold that Palm Corporation did not in fact have standing to challenge the 1942 and

1963 condemnations, we will address the final issue raised by DOT, as this issue was crucial to the trial court's opinion.

could not be the basis for finding a de facto taking. We agree.

Unless a claim is properly raised, it is waived. *Sunbeam Coal Corp. v. Commonwealth Game Commission,* 37 Pa.Cmwlth. 469, 391 A.2d 29 (1978). Moreover, where an actual intrusion is alleged to be a de facto taking and is the result of action of an independent party, the landowner has the burden of proving that the alleged condemnor either authorized or directed the independent party's actions. *Blackburn Appeal,* 98 Pa. Cmwlth. 346, 511 A.2d 270 (1986). If not authorized, the injury is not the immediate and unavoidable result of a public project and is thus, not compensable in eminent domain. *Espy v. Butler Area Sewer Authority,* 63 Pa.Cmwlth. 95, 437 A.2d 1269 (1981).

First, Palm Corporation sets forth only two reasons for a de facto taking in its petition: 1) DOT's interference with his access to his property; and 2) the unauthorized use of the rail line over his property. Nowhere does Palm Corporation claim DOT authorized dumping of debris. Thus, it appears Palm Corporation waived this issue.

Second, even if not waived, no evidence exists that DOT authorized Allan Industries' alleged entry upon Palm Corporation's property. Other than the fact that DOT purchased the rail line to preserve the corridor that served Allan Industries, DOT had no connection with the alleged dumping of debris and thus, we hold that the trial court erred in concluding that a third parties' dumping of debris on Palm Corporation's property was a basis for a de facto taking.

Accordingly, we reverse.

### ORDER

AND NOW, this 27th day of January, 1997, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby reversed.